

06/22/2005

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VERNON DEWAYNE JACKSON, | § | CASE NO. 03-44625-BTR-11 |
| | § | |
| Debtor. | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| VERNON JACKSON AND | § | |
| LANETTE JACKSON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| CHASE MANHATTAN BANK, AS | § | |
| TRUSTEE UNDER THE POOLING | § | |
| AND SERVICING AGREEMENT, | § | |
| DATED AS OF NOVEMBER 1, | § | |
| 2000, AMONG CREDIT-BASED | § | |
| ASSET SERVICING AND | § | |
| SECURITIZATION LLC, | § | |
| RESIDENTIAL ASSET FUNDING | § | ADV. PROC. NO. 03-4300 |
| CORPORATION, LITTON LOAN | § | |
| SERVICING OP AND THE CHASE | § | |
| MANHATTAN BANK, C-BASS | § | |
| MORTGAGE LOAN ASSET-BACKED | § | |
| CERTIFICATES, SERIES | § | |
| 2000-CB4, WITHOUT RECOURSE, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION[1]**

Vernon and Lanette Jackson (collectively, the "Plaintiffs") initiated this adversary proceeding on December 19, 2003, by filing a Complaint to Determine Validity of Lien (the "Complaint"). In the Complaint, the Plaintiffs seek a declaration that the lien on

---
[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

their homestead, which the Plaintiffs allege is held by Chase Manhattan Bank, as trustee (the "Defendant"), is invalid. This matter is before the Court on the Motion of Plaintiffs for Summary Judgment (the "Summary Judgment Motion") and Litton Loan Servicing, L.P.'s Cross Motion for Summary Judgment (the "Cross Motion").

## I. JURISDICTION

A proceeding to determine the validity of a lien raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## II. THE SUMMARY JUDGMENT STANDARD

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure, as adopted and applied to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. The entry of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)). To determine whether summary judgment is appropriate, the record is reviewed in the light most favorable to the non-moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Local District Court Rule CV-56 (made applicable to this proceeding by Local

Bankruptcy Rule 7056) provides that the party moving for summary judgment must include in its motion a "Statement of Material Facts" in a specified format. A party opposing a motion for summary judgment must file a "Statement of Genuine Issues" in response to the movant's statement of material facts, with specified references to proper summary judgment evidence indicating that a genuine issue of material fact exists.[2] In resolving a summary judgment motion, any material facts claimed by the moving party and supported by admissible evidence are admitted by the non-movant, unless the non-movant timely controverts such material facts with proper summary judgment evidence of its own.

In this case, the affidavits and admissible evidence submitted with the Plaintiffs' Summary Judgment Motion, the response by Litton Loan Servicing, L.P. ("Litton"), Litton's Cross-Motion, and the Plaintiffs' response to Litton's Cross Motion produce the following body of uncontested facts:

### III. UNCONTESTED FACTS

On October 6, 2003 (the "Petition Date"), Mr. Jackson filed a petition for relief under Chapter 11 of the Bankruptcy Code. The case was converted to a proceeding under Chapter 7 of the Bankruptcy Code on March 11, 2004, at the request of Mr. Jackson.

This adversary proceeding involves a loan secured by the Plaintiffs' home, which is located in Collin County, Texas (the "Property"). In June 2000, the Plaintiffs refinanced their existing mortgage on the Property and obtained an additional extension of credit. They executed a Promissory Note payable to New Century Mortgage Corporation (the "Lender") in the original principal amount of $865,000 to be paid over

---

[2] The purpose of this rule is to streamline the resolution of summary judgment motions and to make explicit the parties' respective obligations with regard to such motions. *See generally, Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994).

thirty years at 10.9% interest (the "Note"). They also executed a Home Equity Security Instrument (the "Security Agreement") and certain additional documents.

The introductory paragraph of the Note states that the debt is an extension of credit pursuant to article XVI, section 50(a)(6), of the Texas Constitution. The requirements of section 50(a)(6) are referenced throughout the Note, the Security Agreement, and the other loan documents. In regard to the Lender's compliance with these requirements, paragraph 12 of the Note states in pertinent part that:

> All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this Paragraph 12, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, as provided in this Paragraph 12, with all of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advice Lender of the noncompliance by a notice given as required in Paragraph 13, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable period of time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with the failure by the Lender to comply with its obligations under this Extension of Credit.

Further, paragraph 13 of the Note states in pertinent part: "Any notice to Lender shall be given in writing by first class mail (but by certified mail if the notice is given pursuant to Paragraph 12 hereof) to Lender's address stated herein or any other address Lender designates by notice to Borrower."

The Lender is located in Irvine, California, and its address is stated in the Note. There is no evidence in the summary judgment record that the Lender subsequently

designated a different address for notice pursuant to Paragraphs 12 and 13 of the Note. There also is no evidence that the Lender's rights and obligations under the Note and Security Agreement have been assigned to another entity.

The Note and the Security Agreement state (in bold, capitalized letters just above the signature block) that the documents must be executed at the office of the lender, an attorney at law, or a title company. The Plaintiffs executed a "Texas Home Equity Affidavit and Agreement" in which they swore under oath that they were signing the loan documents at the office of the Lender, an attorney at law, or a title company. The documents signed by the Plaintiffs on June 23rd also included a document entitled "Texas Home Equity Owner's Receipt of Closing Documents," in which the Plaintiffs acknowledged receipt of copies of all the loan documents.

On June 28, 2000, the Plaintiffs executed a document entitled "Texas Home Equity Election Not to Cancel" in which they once again acknowledged receiving copies of the loan documents.

On June 29, 2000, the Lender funded the loan. The Plaintiffs used part of the proceeds to pay off existing liens against the Property, including a prior lien by the Lender and a lien held by Jefferson Heritage Bank. On July 6, 2000, the Lender filed the Security Agreement with the County Clerk for Collin County, Texas.

On October 30, 2003, Litton, acting "as servicing agent for the Chase Manhattan Bank, as trustee under the Pooling and Servicing Agreement, dated as of November 1, 2000, among Credit-Based Asset Servicing and Securitization LLC, Residential Asset Funding Corporation, Litton Loan Servicing OP and the Chase Manhattan Bank, C-Bass Mortgage Loan Asset-Backed Certificates, Series 2000-CB4, without recourse," filed

proof the Defendant's secured claim in the amount of $1,027,267.45 in Mr. Jackson's bankruptcy case. The next day, Litton filed a motion for relief from the automatic stay. Litton stated in its motion that Mr. Jackson had failed to make nine payments on his mortgage, through and including the payment due on October 1, 2003.

On November 19, 2003, Mr. Jackson filed a general denial of the allegations in the Defendant's motion. Mr. Jackson also argued that the lien on his home is invalid and that the stay should not be lifted. According to Mr. Jackson, the loan was not closed at the office of a title company, the lender or an attorney at law, as required by the Texas Constitution, but at his home. A final hearing was scheduled for January 13, 2004 on Litton's request for relief from the automatic stay.

On December 19, 2003, the Plaintiffs initiated the instant adversary proceeding against the Defendant, Chase Manhattan Bank, as trustee. A copy of the Complaint was not served on the Defendant as required by Rule 4 of the Federal Rules of Civil Procedure, as adopted and applied to this case by Rule 7004 of the Federal Rules of Bankruptcy Procedure. Instead, the Plaintiffs obtained a summons for "Chase Manhattan Bank, as trustee" and served the summons and Complaint on the attorneys for Litton.

As in their response to Litton's request for relief from the stay, the Plaintiffs alleged in the Complaint that the loan was closed at their home in violation of the Texas Constitution. The Plaintiffs additionally alleged that the loan is invalid because they were not provided with copies of the loan documents as required by the Texas Constitution. Litton withdrew its request for relief from the stay on December 22, 2003 and answered the Complaint on January 21, 2004. In its unverified answer, Litton admitted that it is the successor in interest to the Lender.

In a letter to the Plaintiffs' attorney dated March 15, 2004, Litton described itself as the current holder of the Note and offered to cure the alleged defects in the loan documents. Litton pointed out that it had never received proper notice of the alleged defects, as required by the loan documents, but enclosed a copy of the loan documents and requested that the Plaintiffs execute new loan documentation. Litton also offered to reimburse the Plaintiffs for their reasonable attorneys' fees, plus $1,000.

The Plaintiffs' filed their Summary Judgment Motion prior to Litton's March 15th letter. The Plaintiffs attached copies of the Note and Security Agreement to their affidavits in support of the Summary Judgment Motion. In their affidavits, they state that they signed these documents at their home and did not receive copies until Litton started foreclosure proceedings or by going to the Collin County Clerk's office. The summary judgment record does not contain any evidence regarding when the Plaintiffs received Litton's March 15th letter or the enclosed documents.

## IV. DISCUSSION

### A. Home Equity Lending in Texas

Texas, historically, has limited the types of debts that can be secured by the homestead. *See generally* Julia Patterson Forrester, *Home Equity Loans in Texas: Maintaining the Texas Tradition of Homestead Protection*, 55 SMU L.REV. 157 (Winter 2002). Section 50(a) of article XVI of the Texas Constitution sets forth the types of loans or extensions of credit that may be secured by a borrower's homestead. For example, subsection (a)(1) allows a lien that secures purchase money, and subsection (a)(4) allows a lien that secures the refinance of an existing lien against a homestead. Any lien on a homestead other than the permitted types is invalid.

In 1997, Texas voters approved an amendment to section 50(a) whereby Texas homeowners would be allowed to obtain loans using the equity in their homestead as collateral. The new subsection (a)(6) provided that a borrower's homestead would generally be protected from home equity loans except for those which satisfied numerous requirements. Additionally, the new subsection (a)(6)(f) provided that if the refinance of a debt on a homestead also included an extension of credit, the lender must comply with the requirements of (a)(6) in order to obtain a valid lien on the borrower's homestead.[3]

The provisions of the constitutional amendment permitting home equity loans were designed to protect homeowners from predatory lenders. *See Rooms With a View, Inc., et al. v. Private Nat'l Mortgage Ass'n*, 7 S.W.3d 840, 847 (Tex. App. – Austin, 1999). As it relates to this case, the new section 50(a)(6) included a requirement that the loan must be closed at the office of the lender, attorney at law, or a title company. TEX. CONST. art. XVI, § 50(a)(6)(N). Additionally, lenders were required to provide the property owner with a copy of all documents relating to the extension of credit. TEX. CONST. art. XVI, § 50(a)(6)(Q)(v).

### B. The Summary Judgment Motion and the Cross Motion

In the Summary Judgment Motion, the Plaintiffs seek a declaration from this Court that the execution of the loan documents at their home and the failure of the Lender to provide them with copies of the loan documents violated section 50(a)(6), article XVI of the Texas Constitution and, therefore, that the lien against their home is invalid. Under the Plaintiffs' theory, they would receive a free home. In contrast, Litton argues that the

---

[3] Section 50(f) provides as follows: "A refinance of debt secured by the homestead, any portion of which is an extension of credit described by Subsection (a)(6) of this section, may not be secured by a valid lien against the homestead unless the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section."

lien on the Plaintiffs' home is valid because it was entitled to cure the alleged defects within a reasonable time under section 50(a)(6)(Q)(x). Litton also complains that the Plaintiffs failed to provide notice of the alleged defects in the manner required by Paragraph 13 of the Note.

### 1. The Right to Cure Alleged Defects

The evidence submitted by Litton reflects that the loan at issue in this case involved the refinance of an existing loan on the Plaintiffs' home and included an additional extension of credit. Thus, the Lender was required to meet the requirements of section 50(a)(6) in order to obtain a valid lien against the Plaintiffs' home. With regard to the alleged defects in the Lender's compliance with these requirements, subsection (a)(6) contains a simple "cure process," as follows:

> The lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender or holder's obligations under the extension of credit within a reasonable time after the lender or holder is notified by the borrower of the lender's failure to comply.

TEX. CONST. art. XVI, § 50(a)(6)(Q)(5).

The Texas Supreme Court interpreted this cure process in *Doody, et al. v. Ameriquest Mortgage Co.*, 49 S.W.3d 342 (Tex. 2001).[4] Reading all of the amendments to section 50(a) together, and considering them in light of each other, the Texas Supreme Court concluded that "section 50(a)(6)(Q)(x) is a cure provision that applies to all the lender's obligations under the 'extension of credit' …." *Id.* at 345. The Texas Supreme

---

[4] In *Doody*, the lender charged the property owner closing costs in excess of three percent of the loan, in violation of section 50(a)(6)(E). The lender discovered its error and refunded the excess. Nonetheless, the property owner sued the lender, claiming that its failure to comply with article 16, section 50 of the Texas Constitution rendered its lien on the homestead invalid. The Texas Supreme Court held that the lender had refunded the overcharges within a reasonable time and thereby validated its lien.

Court expressly held that "section 50(a)(6)(Q)(x) operates as authority to cure not only the particular lender obligation at issue under section 50(a)(6), but also to validate the lien." *Id.* at 347.

The Plaintiffs in this case argue that under section 50(a)(6), a lender is permitted to cure only those defects that may be cured unilaterally by the lender. However, the Texas Supreme Court's language in *Doody* regarding the cure provision was unambiguous and unqualified -- "section 50(a)(6)(Q)(x) is a cure provision that applies to all of section 50(a)…." *Doody,* 49 S.W.3d at 345-346.[5] Further, subsequent amendments to section 50(a)(6)(Q)(x) illustrate that all of the section 50(a)(6) requirements are subject to the cure provision. *See In re Adams*, 307 B.R. 549, 555-56 (Bankr. N.D. Tex. 2004).[6] The Plaintiffs' argument, therefore, must fail.

## 2. Application of the Cure Process to this Case

The next question this Court must address is whether Litton complied with the cure process set forth in section 50(a)(6) of the Texas Constitution. The parties dispute when the Lender received notice of the defect and when the clock began running on the time in which the Lender was required to respond. Litton argues that the Court should enforce Paragraph 13 of the Note, which requires that notice of any defects must be sent to the Lender by certified mail. The Plaintiffs argue that Litton first received notice of a

---

[5] The Plaintiffs assert that the decision of the Third District Court of Appeals in *Rooms With a View* is a more "apt" decision than the Texas Supreme Court's decision in *Doody*. However, the Texas appellate court's opinion *Rooms With a View* did not address the issues before this Court. The issue here is the scope and applicability of the cure provision in section 50(a)(6)(Q)(x) of the Texas Constitution. *Rooms With a View* involved a constitutional challenge to another subpart of section 50(a) -- section 50(a)(5) -- which requires that if a home equity loan is for work and material on the borrower's home, the documents must be signed at the office of the third party lender, an attorney, or a title company.

[6] Additionally, section 153.95 of the Texas Administrative Code, which became effective on November 11, 2004, states that "[a] borrower's refusal to cooperate fully with an offer that complies with Section 50(a)(6)(Q)(x) to modify or refinance an equity loan does not invalidate the lender's protection for correcting a failure to comply." 7 TEX. ADMIN. CODE § 153.95.

defect in the Lender's compliance with section 50(a)(6) when they responded to Litton's request for relief from the stay on November 19, 2003, and that Litton received notice of both defects when they served their Complaint on Litton on December 19, 2003.

### *a. Was Written Notice Required?*

As discussed *supra*, section 50(a)(6)(Q)(x) requires that a lender must comply with the requirements of section 50(a)(6) "within a reasonable time after the lender or holder is notified" of a failure to comply. The express language of this provision of the Texas Constitution does not require or suggest that such notice must be in writing. Thus, as a matter of law, section 50(a)(6)(Q)(x) does not require compliance with the parties' contractual agreement in Paragraph 13 of the Note regarding the provision of written notice by certified mail in this case. *Mauzy v. Legislative Redistricting Bd.* 471 S.W.2d 570 (Tex. 1971) (holding that a court may interpolate words into a constitutional provision only "when necessary to achieve clear intent").

### *b. Was Notice Received by the Lender and, If So, When?*

Next, the Court turns to whether and when the Lender or current holder of the Note received notice of the alleged defects in the Lender's compliance with section 50(a)(6). This brings to the fore several conflicting statements made by Litton regarding its status vis-à-vis the Note and Security Agreement. In particular, Litton has variously claimed to represent the Defendant, the Lender and itself:

- Litton appeared in the underlying bankruptcy case and filed a proof of claim and a request for relief from the automatic stay as the servicing agent for Chase Manhattan Bank, as trustee;

- Litton answered the Plaintiffs' Complaint as the defendant and stated that the Plaintiffs had erroneously sued Chase Manhattan Bank. Litton admitted in its (unverified) answer that it is the successor-in-interest to the original Lender. Likewise, in its March 15th letter to the Plaintiffs'

>    attorney, Litton described itself as the current holder of the Note.  Litton also refers to itself as a subsequent holder of the Note in its arguments in response to the Plaintiffs' summary judgment arguments portraying Litton as a party with "unclean hands"; and
>
> •  Litton's statements of fact in its response to the Plaintiffs' Summary Judgment Motion and in its own Cross Motion state that Litton is the servicing agent for New Century Mortgage Corporation, the original Lender.  Litton also refers to itself as the servicing agent for the Lender in its arguments relating to its right to cure the alleged defects in the Lender's compliance with section 50(a)(6).

It is the Plaintiffs' burden to show that they notified the Lender or current holder of the Note of the defect in the Lender's compliance with the loan documents.  The Plaintiffs rely on their response to Litton's request for relief from the stay and their Complaint to establish that they provided such notice through service of the response and subsequent Complaint upon Litton's attorneys.  However, Litton's statements regarding its standing are confused and inconsistent and are not supported by any admissible evidence, such as an affidavit by Litton, as required by Local Rule CV-56.[7]  It is not clear from the record who currently holds the Note, who the Plaintiffs were required to notify of a defect in the Lender's compliance with section 50(a)(6), or who the Plaintiffs were required to serve with the Complaint and Summary Judgment Motion.  While Litton may have waived any defense to the Complaint based on improper service, it remains unclear whether the Lender or current holder of the Note received notice of the alleged defects in the Lender's compliance with section 50(a)(6) as required by the Texas Constitution.

### c. Did the Lender Cure or Offer to Cure Within a Reasonable Time?

Even if the Court were to determine that service of the Complaint on Litton was

---

[7] The only affidavit submitted by Litton is an affidavit of Jennifer Rosse, Vice President/Senior Claims Counsel for Fidelity National Title Company, which issued title insurance of the disputed loan.  Ms. Rosse's affidavit simply describes and attaches copies of the original loan documents.

sufficient notice to trigger section 50(a)(6), the Lender's lien would not be avoided if the alleged defects were cured within a reasonable time. The Court is aware that the Texas Legislature defined "reasonable time" as sixty days in the 2003 amendments to the home equity loan provisions. TEX. CONST. art XVI, §50(a)(6)(Q)(x).[8] This would be an easier case if it were governed by those amendments. This case, however, is governed by the prior version of section 50(a)(6)(Q)(x), which did not contain a concrete time frame or procedure for curing alleged defects in connection with a lender's compliance with the requirements of that section.

In interpreting a provision of the Texas Constitution, the Court starts with the text of the provision. *See Republican Party of Texas v. Dietz,* 940 S.W.2d 86, 89 (Tex. 1997). The language is presumed to have been carefully selected, and the words are to be understood as people generally understood them. *See Spradlin v. Jim Walter Homes*, Inc., 34 S.W.3d 143 (Tex. 1995). Where a term has been judicially construed prior to its

---

[8] In 2003, the Texas Legislature proposed several amendments to section 50(a)(6) of article XVI of the Texas Constitution. With regard to the "cure process," the requirement that the lender must correct any defect within a reasonable period of time was deleted and replaced with a more specific series of cure provisions. The legislative history states that the proposed amendment is "clarifying the cure process" and "establish[ing] provisions for a lender to cure an error in home equity lending." *See* House Committee Report, Tex. S.J.R. 42, 78th Leg., R.S. (2003); Senate Committee Report, Tex. S.J.R. 42, 78th Leg., R.S. (2003).

The new subsection 50(a)(6)(Q)(x), which was approved by Texas voters in November 2003, provides in pertinent part that:

> [T]he lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by ….(f) if the failure to comply cannot be cured under Subparagraphs(x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section…."

TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). A borrower provides adequate notice of the lender's failure to comply with the requirements of section 50(a)(6) by taking reasonable steps to notify the lender or holder of the alleged failure to comply. The notice must include a reasonable: (1) identification of the borrower; (2) identification of the loan; and (3) description of the failure to comply. 7 TEX. ADMIN. CODE § 153.91 (effective November 11, 2004).

**MEMORANDUM OPINION – Page 13**
ADV. PROC. NO. 03-4300

use in a constitutional provision, an inference arises that the term has the same significance. *Carr v. Tucker*, 42 Tex. 330 (1875). With regard to "reasonable time," Texas courts have generally interpreted the term by considering the facts and circumstances of each case. *See, e.g., Hamilton v. Shirley-Self Motor Co.*, 202 S.W.2d 952 (Tex. Civ. App. – Ft. Worth, 1947, writ ref'd n.r.e.) (reasonable time to perform contract); *Barnes v. State*, 832 S.W.2d 424, 426 (Tex. App. – Houston [1st Dist.] 1992, no writ) (reasonable time for court to respond to motion).

In this case, the record and the summary judgment proof show that the Plaintiffs initiated this litigation within thirty days of complaining of an alleged defect in their home equity loan (*i.e.*, the loan documents were signed at the Plaintiffs' home) in response to Litton's request for relief from the automatic stay. The Plaintiffs' Complaint contained an additional alleged defect (*i.e.*, they did not receive copies of the loan documents). Approximately three months after the Plaintiffs' filed the Complaint and less than two months after Litton responded to the Complaint, Litton sent the Plaintiffs' attorney copies of the loan documents and requested that the Plaintiffs execute new loan documents to correct the alleged failure to execute the original loan documents at the offices of the Lender, an attorney, or the title company.

There is no evidence that there was any impending event that required a more prompt offer of cure. The Plaintiffs have offered no evidence that they suffered any prejudice due to the delay in responding to their claims or that Litton's offer of cure was unreasonable. Furthermore, there may have been some question as to whether the automatic stay barred the Lender or current holder of the Note from seeking to cure the alleged defects in the Lender's compliance with section 50(a)(6) of the Texas

Constitution.[9] There may also have been some question regarding whether service of the Complaint on Litton's attorneys, rather than the Defendant or Litton itself, was sufficient.

It also is significant that the alleged defects could not have been discovered by the Lender or a subsequent holder of the Note simply by reviewing the loan documents. In the loan documents, discussed *supra*, the Plaintiffs swore under oath that the documents were executed as required by the Texas Constitution. The Plaintiffs also signed several documents acknowledging receipt of the closing documents.[10] The fact that the Plaintiffs' claims in this adversary proceeding contradict their prior statements would have required the Lender or current holder of the Note to investigate events that occurred more than three years before the Complaint. The Plaintiffs have offered no explanation for their conflicting statements. *See Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 137 n. 23 (5th Cir. 1992); *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 228 (5th Cir. 1984).

However, as discussed *supra*, the summary judgment record does not contain admissible evidence as to who currently holds the Note. Without this information, the Court cannot determine whether or when that entity received notice of the alleged defects in the Lender's compliance with section 50(a)(6) of the Texas Constitution. Likewise, there is no evidence of whether or when the March 15th cure letter was delivered to the Plaintiffs – although the letter states that it was delivered by hand to the Plaintiffs' attorney. The Court, therefore, cannot determine whether the Lender or current holder of

---

[9] In *In re Adams*, 307 B.R. 549, 559 (Bankr. N.D. Tex. 2004), for example, Ameriquest requested that the bankruptcy court modify the stay to the extent necessary to permit it to send a letter to the debtors regarding Ameriquest's intent to cure.

[10] Although a discharge order has been entered in this case, the Court notes that these statements, which the Plaintiffs now claim were untrue, might have raised a dischargeability issue. *See* 11 U.S.C. §523(a)(2).

**MEMORANDUM OPINION** – Page 15
ADV. PROC. NO. 03-4300

the Note offered to cure the alleged defects in the Lender's compliance with section 50(a)(6) of the Texas Constitution within a "reasonable time" after receiving notice of the alleged defects from the Plaintiffs.

## VI. CONCLUSION

For the all of the foregoing reasons, the relief requested in the Plaintiffs' Summary Judgment Motion and Litton's Cross Motion is denied. Neither Litton nor the Plaintiffs have established that no genuine issue of material fact exists or that they are entitled to judgment as a matter of law.

Signed on 6/21/2005

*Brenda T. Rhoades*  SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE